Terri H. Didion, Assistant United States Trustee  E-Filed: June 9, 2023
State Bar No. CA 133491
Edward M. McDonald Jr., Trial Attorney
State Bar No. NY 4126009
*edward.m.mcdonald@usdoj.gov*
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Cell: (702) 388-6602
Attorneys for the United States Trustee for Region 17
      TRACY HOPE DAVIS

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: <br><br>**GRAND CANYON DESTINATIONS, LLC,** <br><br>Debtor. | Case No: BK-S-23-10399-NMC <br> Chapter 11, Subchapter V <br><br> Date: July 11, 2023 <br> Time: 9:30 a.m. <br> Location: Foley Courtroom 3-Telephonic <br> Tel: (669) 254-5252 <br> ID: 161-166-2815; Code: 115788# |

**MOTION OF THE U.S. TRUSTEE TO REMOVE SUBCHAPTER V DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185(a), GRANT RELIEF UNDER 11 U.S.C. §1183(b)(2), AND RESERVATION OF RIGHTS**

To the Honorable NATALIE M. COX, United States Bankruptcy Judge**:**

Tracy Hope Davis, United States Trustee for Region 17 ("U.S. Trustee"), hereby files this *Motion of the U.S. Trustee to Remove Subchapter V Debtor in Possession Pursuant to 11 U.S.C. § 1185(a), Grant Relief under 11 U.S.C. § 1183(b)(2), and Reservation of Rights* ("Motion").[1]

---

[1] Unless otherwise noted: "Section" refers to a section of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"); "FRBP" refers to the Federal Rules of Bankruptcy Procedure; FRE refers to the Federal Rules of Evidence; and, "ECF No." refers to the bankruptcy docket for *In re Grand Canyon Destinations, LLC,* Case No. 23-10399-NMC. "Athen's" refers to Athen's Inc. "Athen's Case" refers to *In re Athen's Inc.*, Case No. 23-11659-NMC (Bankr. D. Nev.). Athen's Case and ECF No. when referenced together refers to the bankruptcy docket in the Athen's Case.

The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in the Debtor's case, pursuant to FRBP 9017 and FRE 201. To the extent that the Motion contains

**INTRODUCTION**

"Cause" exists to remove the captioned Subchapter V debtor, Grand Canyon Destinations, LLC ("Debtor" or "GCD") from possession because Debtor's representative and 100% owner admitted to transferring funds received as a COVID-19 Economic Injury Disaster Loan ("EIDL") to an affiliate that used them for cryptocurrency mining. The improper transfer of the COVID funds may result in civil penalties or avoidance actions brought under Chapter 5. Cause exists to remove the Debtor because the Debtor and the Debtor's representative have a conflict --they are not likely to investigate and pursue the estate's claims related to the allegedly improper transfer of COVID funds for the benefit of Debtor's creditors. For these reasons, the U.S. Trustee has established cause to remove the Debtor from possession pursuant to Section 1185(a) and requests that the Court enter an order removing the Debtor as a debtor in possession.

If the Court grants the relief requested under 11 U.S.C. § 1185(a) and removes the Debtor as debtor in possession, "cause' exists to grave the Subchapter V trustee the investigatory and reporting powers set for in 11 U.S.C. § 1183(b)(2).

Consistent with her independent and statutory duties, the U.S. Trustee reserves all rights with respect to this matter, including, but not limited to her right to take any appropriate action under title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure, and the local bankruptcy rules of the United States Bankruptcy Court.

The Motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

JURISDICTION AND VENUE

1. The Bankruptcy Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 1334(a), 1334(b), and 157(b).

2. The U.S. Trustee brings this Motion pursuant to her statutory duty to monitor bankruptcy cases under 28 U.S.C. § 586(a)(3).

---

factual assertions predicated upon statements made by Debtor, Athen's, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under FRBP 9017 and FRE 801(d)(2).

3.  The U.S. Trustee has standing to prosecute the Motion pursuant to Sections 307 and 1185 and FRBP 9014.  *See Stanley v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Donovan Corp.)*, 215 F.3d 929, 930 (9th Cir. 2000).

4.  Venue of this case and the contested matter presented by the Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  Pursuant to LR 9014.2, the U.S. Trustee consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## BACKGROUND FACTS AND PROCEDURAL POSTURE

6.  On February 3, 2023, the Debtor filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code commencing this case.  [*See* ECF No. 1].  The petition was signed by Anthony Dobbs as Debtor's president.  [*See* ECF No. 1, p. 5 of 25].  Debtor's 2021 tax return was attached to the petition and indicates that Anthony S. Dobbs owns 100% of the Debtor. [*See* ECF No. 1, p. 19 of 25].

7.  On February 8, 2023, the U.S. Trustee appointed Nathan F. Smith as the Subchapter V trustee in this case. [*See* ECF No. 23].

8.  The 341 meeting of creditors was held, and the meeting was concluded on April 6, 2023.  [*See* ECF Nos. 12, 58 & 88].

9.  The Court has not ordered the appointment of an official committee of unsecured creditors in this case and no official committees have been appointed in this case.  [*See generally* case docket].

10.  "The Debtor is a tour operator offering a variety of small and large group tours, primarily from Las Vegas to the Grand Canyon."  [*See* ECF No. 8, p. 1 of 5; ¶3].

11.  Debtor's Schedule D indicates that it owes the U.S. Small Business Administration ("SBA") a secured debt of $2,077,285.96.  [*See* ECF No. 44, p. 2 of 13; Claim 2.2].

3

12. On February 10, 2023, the SBA filed a proof of claim ("POC") for a secured claim for $2,077,285.96, of which $2,000,000 was principal. [*See* Claims Register, POC 2-1]. The SBA attached to the POC the initial loan authorization and agreement ("Loan Agreement") for $150,000.00. [*See* Claims Register, POC 2-1 Part 2, pp. 6-11 of 65]. The Loan Agreement was signed by Anthony Dobbs on May 31, 2020 [*see* Claims Register, POC 2-1 Part 2, p. 11 of 65] and provides, *inter alia*, that:

> Borrower will use all the proceeds of this Loan <u>solely as working capital</u> to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.
>
> . . . .
>
> <u>Borrower will not, without the prior written consent of SBA</u>, make any distribution of Borrower's assets, or give any preferential treatment, <u>make any advance</u>, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or <u>to any company directly or indirectly controlling or affiliated with or controlled by Borrower</u>, or any other company.
>
> . . . .
>
> Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

[*See* Claims Register, POC 2-1 Part 2, pp. 7 & 9-10 of 65 (emphasis added)].[2]

---

[2] The U.S. Small Business Administration's website provides information about EIDL loans and specifies that the uses of EIDL proceeds are for "Working capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses,

4

13. The SBA attached to its POC an Amended Loan Agreement for $500,000, which was signed by Anthony Dobbs on February 18, 2022, [*see* Claims Register, POC 2-1 Part 2, p. 31 of 65] which contains the same limitations listed in paragraph 12 *supra*. [*See* Claims Register, POC 2-1 Part 2, pp. 27 & 29-30 of 65; *see generally* Claims Register, POC 2-1 Part 2, pp. 26-31 of 65].

14. The SBA also attached to its POC a Second Amended Loan Agreement for $2,000,000, which was signed by Anthony Dobbs on March 11, 2022, [*see* Claims Register, POC 2-1 Part 2, p. 52 of 65] which contains the same limitations listed in paragraph 12 *supra*. [*See* Claims Register, POC 2-1 Part 2, pp. 48 & 50-51 of 65; *see generally* Claims Register, POC 2-1 Part 2, pp. 47-52 of 65].

15. Debtor's amended statement of financial affairs ("SOFA") indicates that within the one-year look back period, it made a series of payments to an insider named New Charters Nevada, Inc. ("NCN"), as follows:

| Date | Transaction Type | Memo/Description | Amount | Balance |
|---|---|---|---|---|
| 04/13/2022 | Expense | Loan disbursement | -1,000.00 | -1,000.00 |
| 05/04/2022 | Expense | Loan disbursement | -40,000.00 | -41,000.00 |
| 05/10/2022 | Expense | Loan disbursement | -1,790,578.00 | -1,831,578.00 |
| 05/12/2022 | Expense | Loan disbursement | -65,000.00 | -1,896,578.00 |
| 07/07/2022 | Expense | Loan disbursement | -300.00 | -1,896,878.00 |
| 08/02/2022 | Expense | Loan disbursement | -1,000.00 | -1,897,878.00 |
| 08/02/2022 | Expense | Loan disbursement | -1,000.00 | -1,898,878.00 |
| 09/01/2022 | Expense | Loan disbursement | -23,000.00 | -1,921,878.00 |
| 12/05/2022 | Expense | Loan disbursement | -25,000.00 | -1,946,878.00 |
| 01/31/2022 | Expense | Branch Acct […] | -68.47 | -1,946,946.47 |
|  |  |  | -1,946,946.47 |  |

[*See* ECF No. 66, pp. 7-8 (¶¶30 & 30.1), 152 & 154 of 166].

16. The Omnibus Declaration of Anthony Dobbs in support of the Debtor's First Day Motions provides, *inter alia*, that:

---

and to pay business debt incurred at any time (past, present, or future)." *See* https://www.sba.gov/funding-programs/loans/covid-19-relief-options/covid-19-economic-injury-disaster-loan/about-covid-19-eidl. In addition, the U.S. Small Business Administration's website contains a "Frequently Asked Questions" documents explaining that "EIDL proceeds can be used to cover a wide array of working capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments." *See* https://www.sba.gov/sites/default/files/2020-09/COVID%20EIDL%20FAQ%20rev%20092120-508.pdf. [*See also* Declaration of Carla K. Cordero ("Cordero Declaration")].

5

> In an effort to augment revenues, Debtor loaned $1,895,578 to New Charters, Nevada ("NCN"), an affiliate of Debtor which was established for the purpose of mining cryptocurrency. While expected to generate a return of 12% per annum, in fact the loans have been significantly impaired by the more recent plunge in the cryptocurrency market. Although NCN made payments totaling $436,502.50, it was unable to pay the note at maturity (triggering a 25% default interest rate). As of November 30, 2022, the amount due to the Debtor from NCN is in excess of $1.7 million.

[*See* ECF No. 8, p. 2 of 5; ¶7].

17. The note that Debtor received from NCN is attached to Debtor's amended SOFA. The note was signed by Anthony Dobbs on May 10, 2022, is for $1,895,578.00, with an original repayment date of August 10, 2022, which was later amended on August 10, 2022, to extend the due date to August 10, 2023. [*See* ECF No. 66, pp. 163-165 of 166].

18. Debtor's amended SOFA also contains a chart which indicates that NCN has only repaid $436,502.50 of the loan to Debtor in a series of payments made between May 16, 2022 and November 8, 2022. [*See* ECF No. 66, p. 166 of 166].

19. Debtor's amended Schedule A/B lists the promissory note from NCN as having a current value of $150,000.00. [*See* ECF No. 114, p. 4 of 7; ¶14.1].

20. However, Debtor's amended Schedule A/B does not list any causes of action, or potential causes of action, against third parties, including Chapter 5 causes of action against NCN to recover the money transferred to it by the Debtor during the lookback periods under federal or state law. [*See* ECF No. 114, p. 6 of 7; ¶70].

21. At the Section 341 meeting creditors on March 9, 2023, Anthony Dobbs testified that he owned 40% of NCN. [*See* Declaration of Monette Semana ("Semana Declaration"), Exhibit 1, p. 15:4-12].

22. At the Section 341 meeting creditors on March 9, 2023, Anthony Dobbs also testified that a "significant portion" of the SBA loan was loaned by the Debtor to NCN. [*See* Semana Declaration, Exhibit 1, p. 23:4-11].

23. At the continued Section 341 meeting creditors on April 6, 2023, Anthony Dobbs testified that he had read the SBA loan document. [*See* Semana Declaration, Exhibit 2, p. 34:19-24].

6

24. The Office of the U.S. Trustee requested evidence of what consent, if any, the Debtor received from the SBA allowing it to transfer the SBA loan proceeds to NCN, but GCD has not indicated that it had permission. [*See* Cordero Declaration].

25. On March 9, 2023, Debtor and the SBA entered into a stipulation allowing the Debtor to use the SBA's cash collateral, which contained the following representation of the Debtor to SBA:

> Other than the Debtor's use of Cash Collateral on the terms set forth herein, Debtor represents to the SBA that it will make no additional or unauthorized use of the Cash Collateral <u>retroactive from the earlier of the SBA Loan date</u> until entry of an Order Confirming the Debtor's Plan of Reorganization, or April 30, 2023, whichever occurs earlier, for ordinary and necessary expenses as set forth in the projections, which is attached as Exhibit "A" (the "Projections"), which shall not vary more than 10% on a total-disbursements cumulative basis and 20% per line-item basis.

[*See* ECF No. 57, p. 3 of 10; lines 16-21 (emphasis added)].

26. Debtor moved to have this cash collateral stipulation approved on negative notice. [*See* ECF No. 64].

27. On April 4, 2023, the Court granted the motion and approval the Debtor's cash collateral stipulation with the SBA. [*See* ECF No. 84].

28. On May 3, 2023, Debtor and Athen's filed a joint plan of reorganization, which is currently set for confirmation on July 11, 2023. [*See* ECF Nos. 104-105; *see also* Athen's Case, ECF Nos. 27-28]. This plan proposes to substantively consolidate Athen's and the Debtor's estates with the equity interest therein transferred to a new corporation owned by Anthony Dobbs, and under which general unsecured creditors will be paid a dividend of approximately .0025%. [*See* ECF No. 104, pp. 17-18 & 20 of 25; ¶5]. Although the SBA's secured claim for the Debtor is listed in a separate secured class in the plan, the SBA secured for Athen's is not. [*See* ECF No. 104, pp. 16 of 25; Plan §2c]. [3]

---

[3] The U.S. Trustee filed an Objection and Reservation of Rights to the Plan filed by Debtor and Athens. [*See* ECF No. 116; *see also* Athen's Case, ECF Nos. 47-48].

7

29. The Office of the U.S. Trustee has consulted with the Subchapter V trustee for the GCD Case, who indicated that he is willing and able to take on an expanded role in the GCD Case if GCD is displaced as a debtor in possession.

**The Athen's Bankruptcy**

30. On April 27, 2023, Athen's filed bankruptcy commencing the Athen's Case. [*See* ECF No. 94, pp. 3 & 5 of 10].[4]

31. The Court has not ordered the appointment of an official committee of unsecured creditors in the Athen's Case and no official committees have been appointed in the Athen's Case. [*See generally* Athen's Case docket].

32. Based on a declaration made by Anthony Dobbs, dated April 28, 2023, and filed in support of a motion to jointly administer the Debtor's case with the Athen's Case, "Athens is a company affiliated with GCD and was formed in 2017 for the purpose of purchasing vehicles which (it was hoped) could be chartered to GCD as well as other tour operators or customers. GCD guaranteed certain purchase obligations of Athens." [*See* ECF No. 95, p. 2 of 2; ¶5].

33. Anthony Dobbs states in his declaration in support of Debtor's motion for joint administration that "Athens has determined that it does not make economic sense to continue operations separately from GCD. Athens and GCD contemplate proposing a joint plan which calls for payment in full of administrative, priority, and secured claims (over time) and some distribution to unsecured creditors, who would receive little or nothing in a liquidation." [*See* ECF No. 95, p. 2 of 2; ¶9].

34. The amended Schedules and statements of Athen's lists secured debt owed to the SBA for $1,258,200.00. [*See* Athen's Case, ECF No. 38, pp. 8-9 of 12; Claim 2.5].

35. Anthony Dobbs owns 100% of Athen's. [*See* Athen's Case, ECF No. 4, pp. 6-7 of 8; ¶28].

36. Athen's made the following payments to NCN:

---

[4] The U.S. Trustee appointed Edward M. Burr as Subchapter V trustee in the Athen's Case on May 1, 2023. [*See* Athen's Case, ECF No. 17].

8

| Date | Transaction Type | Memo/Description | Amount |
|---|---|---|---|
| 03/10/2022 | Expense | Loan disbursement | 1,000.00 |
| 04/14/2022 | Expense | Loan disbursement | 2,000.00 |
| 05/10/2022 | Expense | Loan disbursement | 482,823.00 |

[*See* Athen's Case, ECF No. 4, p. 8 of 8].[5]

37. The amended Schedule A/B of Athen's lists the promissory note from NCN as having a current value of $40,000.00. [*See* Athen's Case, ECF No. 38, p. 3 of 12; ¶14.1].

38. However, Athen's amended Schedule A/B does not list any causes of action, or potential causes of action, against third parties. [*See* Athen's Case, ECF No. 38, p. 5 of 12; ¶74].

39. On May 2, 2023, the SBA filed a POC in the Athen's Case for a secured claim for $1,329676.33, of which $1,258,000 was principal. [*See* Athen's Case, Claims Register, POC 2-1]. The SBA attached to the POC an amended loan authorization and agreement ("Athen's Loan Agreement") for $1,258,300.00. [*See* Athen's Case, Claims Register, POC 2-1 Part 2, pp. 4-9 of 23]. The Athen's Loan Agreement was signed by Anthony Dobbs on January 19, 2022. [*See* Athen's Case, Claims Register, POC 2-1 Part 2, p. 9 of 65].

40. The Athen's Loan Agreement contains the same limitations as those for the Debtor's SBA loans as listed in paragraph 12 *supra*. [*See* Athen's Case, Claims Register, POC 2-1 Part 2, pp. 5 & 7-8 of 65].

41. At the Athen's Case Section 341 meeting on June 1, 2023, Anthony Dobbs testified that Athen's used some of the money it received from the SBA loan to make loans to NCN. [*See* Semana Declaration, Exhibit 3, pp. 26:24 – 27:2].

42. Anthony Dobbs states in his declaration in support of Debtor's motion for joint administration that "Athens loaned funds NCD[6] in the amount of $482,832." [*See* ECF No. 95, p. 2 of 2; ¶8].

---

[5] The SOFA of Athen's also indicates that NCN repaid $58,200.00 of these loans between May 17, 2022 and January 31, 2023, leaving a balance of $427,623.00. [*See* Athen's Case, ECF No. 4, p. 8 of 8].

[6] Given the context of the paragraph, "NCD" appears to be a typographical error and should by NCN. [*See* ECF No. 95, p. 2 of 2; ¶8]. At the Athen's Case Section 341 meeting on June 1, 2023, Anthony Dobbs clarified that Athen's loaned money to NCN. [*See* Semana Declaration, Exhibit 3, p. 23:5-22].

9

43. At the Athen's Case Section 341 meeting on June 1, 2023, Anthony Dobbs testified that he had read the Athen's Loan Agreement, but that he had not received consent from the SBA to transfer its loan proceeds to NCN. [*See* Semana Declaration, Exhibit 3, pp. 28:10-12, 29:22 – 30:12, and 48:21 – 49:16].

44. On May 24, 2023, Athen's and the SBA entered into a stipulation allowing Athen's to use the SBA's cash collateral, which contained the following representation of the Athen's to SBA:

> Other than the Debtor's use of Cash Collateral on the terms set forth herein, Debtor represents to the SBA that it will make no additional or unauthorized use of the Cash Collateral <u>retroactive from the earlier of the SBA Loan date</u> until entry of an Order Confirming the Debtor's Plan of Reorganization for ordinary and necessary expenses as set forth in the projections, which is attached as Exhibit "A" (the "Projections"), which shall not vary more than 10% on a total-disbursements cumulative basis and 20% per line-item basis.

[*See* Athen's Case, ECF No. 34, p. 4 of 9; lines 1-7 (emphasis added)].

45. On May 24, 2023, Athen's moved to have this cash collateral stipulation approved on negative notice and on June 7, 2023 the Court entered an order approving it. [*See* Athen's Case, ECF Nos. 35 & 46].

46. The Office of the U.S. Trustee has consulted with the Subchapter V trustee for the Athen's Case, who indicated that he is willing and able to take on an expanded role in the Athen's Case if Athen's is displaced as a debtor in possession.

## ARGUMENT

**A.     <u>Cause exists under 11 U.S.C. § 1185(a) to remove Debtor from possession.</u>**

47. Section 1185(a) of the Bankruptcy Code provides that "[o]n request of a party in interest . . . the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case[.]"  11 U.S.C. § 1185(a).

48. Although there is no governing authority establishing the standards that constitute "cause" under section 1185(a), this Court can consider analogous authority under section 1104(a)(1) because it uses the same language as 1185(a). *In re Neosho Concrete Products Co.*, 20-30314,

10

2021 WL 1821444, at *8 (Bankr. W.D. Mo. May 6, 2021) (citing *In re Peak Serum, Inc.*, 623 B.R. 609, 614 n.1 (Bankr. D. Colo. 2020)); *see also, In re Pittner*, 638 B.R. 255, 259 (Bankr. D. Mass. 2022) ("Section 1104 does not apply in a case under subchapter V, but subchapter V contains its own parallel provision in 1185(a)'s authorization for the court to remove a debtor from possession for cause[.]").

49. The categories enumerated in 11 U.S.C. § 1104(a)(1) refer to pre- or post-petition fraud, dishonestly, incompetence, or gross mismanagement, but pursuant to the Code's rules of construction, "includes' and 'including' are not limiting[.]" 11 U.S.C. § 102(3). Other grounds warranting the appointment of a trustee include "conflicts of interest, inappropriate relations between corporate parents and subsidiaries, misuse of assets and funds, inadequate record keepings and reporting, failure to disclose relevant and material information, lack of credibility and creditor confidence, and various other similar instances of cause." *In re Ancona*, No. 14- 10532 (MKV), 2016 WL 7868696, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016) (citing *In re Ashley River Consulting, LLC*, No. 14-13407 (MG), 2015 WL 1540941, at * 9 (Bankr. S.D.N.Y. Mar. 31, 2015)).

50. If a debtor defaults in its responsibilities as an estate fiduciary, the debtor may be dispossessed of control of its business and a chapter 11 trustee should be appointed. *Id.* at 10. Similarly, where the debtor has questionable inter-company dealings and the principal of the debtor occupies conflicting positions in the other affiliated companies, a trustee should be appointed. *See In re Sillerman*, 605 B.R. 631, 646-47 (Bankr. S.D.N.Y. 2019).

51. "The party seeking relief under [. . . ] Section 1104(a) bears the burden of proof under a preponderance of the evidence standard." The Supreme Court has consistently held that the presumptive standard of proof in civil cases is preponderance of the evidence unless a fundamental right is implicated or there is contrary Congressional direction. *See Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1923, 1934 (2016) (rejecting heightened burden for award of enhanced damages for patent infringement); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 34 S. Ct. 1749, 1758 (2014) (rejecting heightened burden for attorneys' fees award in patent litigation); *Grogan v. Garner*, 498 U.S. 279 (1991) (rejecting heightened burden for exceptions to

11

discharge); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-390 (1983) (rejecting heightened burden for securities fraud). *See also In re Draft Bars LLC*, No. 16-16656-MKN, 2018 Bankr. LEXIS 1606, at *8-*9 (Bankr. Nev. Mar. 29, 2018).[7]

52. Section 1183(b) provides that "[t]he [subchapter V] trustee shall – (5) if the debtor ceases to be a debtor in possession, perform the duties specified in section 704(a)(8) and paragraphs (1), (2), and (6) of section 1106(a) of this time, including operating the business of the debtor." 11 U.S.C. § 1183(b)(5).

**B.    Debtor Allegedly Misused the EIDL Proceeds**

53. There is cause to remove the Debtor as debtor in possession based on gross mismanagement and/or the misuse of the EIDL proceeds.[8] *See In re Colby Construction Corp.*, 51 B.R. 113, 117 (Bankr. S.D.N.Y. July 15, 1985) ("The presumed misuse of trust funds, constitutes at least gross mismanagement as defined by § 1104(a)(1). . . ."); *In re Klaynberg*, 643 B.R. 309, 321 (Bankr. S.D.N.Y. Sept. 19, 2022) ("The Court keeps in mind that while "fraud, dishonesty, incompetence, or gross mismanagement" are explicit grounds for cause under 11 U.S.C. § 1104(a), it is also reminded other factors such as "conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries" and "misuse of assets and funds" are relevant to the inquiry.").

---

[7] Because a chapter 11 debtor has no fundamental or constitutional right to remain in control of estate assets, the proper burden of proof is the preponderance of the evidence. *See Keeley & Grabanski Land P'ship v. Keeley (In re Keeley & Grabanski Land P'ship)*, 455 B.R. 153, 163 (B.A.P. 8th Cir. 2011) (applying preponderance standard to a motion to appoint a Chapter 11 trustee pursuant to Section 1104, because the debtor's interest in operating the estate "cannot reasonably be said to be any more important" than a debtor's interest in obtaining a discharge of debts); *In re Veblen West Dairy, LLP*, 434 B.R. 550, 555-56 (Bankr. D.S.D. 2010) (same). *See also In re Neosho Concrete Prods. Co.*, No. 20-30314, 2021 Bankr. LEXIS 1198, at *22-*23 (Bankr. W.D. Mo. May 6, 2021) (arguing by analogy with Section 1104(a) that the burden of proof to remove a debtor in possession pursuant to Section 1185(a) is the preponderance of the evidence).

[8] Pre-petition conduct alone may provide the basis for a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd.*, 185 B.R. 615, 619 (Bankr. D. Wyo. 1995) (holding that even though there was no evidence of a post-petition breach of fiduciary duty, pre-petition conduct of debtor's management warranted appointment of a trustee under § 1104(a)(1)).

12

54. Prepetition the Debtor received two million dollars based on the Loan Agreement and its two amendments. [*See* ECF No. 44, p. 2 of 13; Claim 2.2]. Mr. Dobbs testified that he read these agreements. [*See* Semana Declaration, Exhibit 2, p. 34:19-24]. These loan agreements contained restrictions on the use of the EIDL moneys, including that the money had to be used as working capital and could not be transferred to affiliates. [*See* Claims Register, POC 2-1].

55. Notwithstanding the restrictions in the Loan Agreement and its amendments, Mr. Dobbs testified that a significant portion of the nearly $1.9 million he transferred to NCN, an affiliate company that mines cryptocurrency, came from the SBA EIDL loan proceeds. [*See* Semana Declaration, Exhibit 1, p. 23:4-11].

56. In addition, there is no evidence that Debtor sought or received permission from the SBA to transfer the EIDL proceeds to an affiliate of the Debtor as required by the terms of the EIDL loan to Debtor.

57. Accordingly, Mr. Dobbs may have caused the Debtor to be civilly liable for 1.5 times the principal amount of the EIDL funds, which was $2,000,000—in other words, for an additional $3 million in claims against the estate. [*See* Claims Register, POC 2-1 Part 2, pp. 7 & 9-10 of 65].

58. Debtor and its manager appear to have engaged in gross mismanagement. Anthony Dobbs, the 40% owner of NCN, a cryptocurrency mining company, appears to have violated the terms of the Loan Agreement by transferring a significant portion of the $2 million loan proceeds and potentially exposed the Debtor to considerable civil penalties. NCN, an insider by virtue of Anthony Dobb's ownership interest in it, has repaid less than $500,000 of the original loan made to NCN, and valued the NCN note at $150,000 on Debtor's bankruptcy schedules.[9]

---

[9] The Bankruptcy Code defines an insider of a corporate debtor as, *inter alia*, one of its officers, directors, or persons in control, or an "affiliate, or insider of an affiliate as if such affiliate were the debtor." *See* 11 U.S.C. §§ 101(31)(B) & (E). The Bankruptcy Code defines an affiliate as either an entity that directly or indirectly controls 20% or more of the outstanding voting securities of the debtor, or a corporation for which the Debtor directly or indirectly controls 20% or more of its outstanding voting securities. *See* 11 U.S.C. § 101(2). Because Anthony Dobbs owns 40% of NCN and 100% of the Debtor, NCN is an insider of the Debtor.

59. Mr. Dobbs testified that a significant portion of the EIDL proceeds were transferred to his affiliate crypto-mining company. Debtor is not in the business of mining cryptocurrency and therefore in transferring the EIDL proceeds to NCN, Debtor was not using the EIDL proceeds as working capital. In addition, there is no evidence that Debtor sought or received permission from the SBA to transfer the EIDL proceeds to its affiliate company NCN, which is required under the terms of the EIDL loan. Therefore, the representation of Debtor and Mr. Dobbs in the Debtor's Cash Collateral stipulation with the SBA that from the loan date going forward Debtor has not misused the EIDL loan funds in accordance with the Loan Agreement is clearly inconsistent with the Debtor's transfer to NCN of nearly $1.9 million in funds to mine cryptocurrency, a significant portion of which came from the SBA EIDL Loan proceeds.

60. Accordingly, cause exists to remove the Debtor as debtor in possession under 11 U.S.C. § 1185.

### C. Debtor is Conflicted from Pursuing Any Claims It May Have Against Mr. Dobbs or NCN.

61. A debtor has a fiduciary duty to make impartial investigations and decisions in pursuing claims and objecting to claims on behalf of the estate. *In re Ancona*, 2016 WL 7868696, at *10. When a debtor is not able to do that because such actions would be contrary to the Debtor's principal's best interest, a trustee should be appointed. *See e.g. In re Marvel Ent. Grp.*, 140 F.3d 463, 473 (3d Cir. 1998) (appointing a trustee when the debtor "would be placed in an awkward position of evaluating their own indenture and debt claims"); *In re Sillerman*, 605 B.R. at 646-47 (appointing a trustee when the debtor was conflicted from bringing avoidance actions against his non-debtor affiliated entities and family members); *In re McCorhill Publishing*, 73 B.R. 1013, 1017 (Bank. S.D.N.Y. 1987) (appointing a trustee when a debtor had paid for expenses for non-debtor affiliates and the debtor's directors and officers had conflicting interests in such affiliates).

62. As Debtor's representative, Anthony Dobbs is unlikely to investigate or pursue claims against himself for the transfer of the EIDL loan funds to NCN, including avoidance actions a debtor in possession could bring under Chapter 5. Indeed, Debtor's amended Schedule A/B does not even list potential actions against third parties as assets of the Debtor. [*See* ECF No.

114, p. 6 of 7; ¶70]. Further, the joint plan does not provide an analysis of the value of potential Chapter 5 avoidance actions that could be pursued for the benefit of creditors. [*See* ECF No. 104].

63. In addition, Anthony Dobbs is unlikely to pursue avoidance actions against NCN for the moneys loaned to it, because he owns 40% of NCN. [*See* Semana Declaration, Exhibit 1, p. 15:4-12].

64. "The existence of potential claims against [an insider of the Debtor] evidence a conflict of interest that warrants appointment of a Chapter 11 Trustee as being in the best interests of the Debtor's estate." *In re Grasso*, No. 12-11063-MDC, 2012 Bankr. LEXIS 6247, at 11 (Bankr. E.D. Pa. Oct. 16, 2012). *See also In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 (3rd Cir. 1989) (recognizing that the reluctance of a debtor's management to pursue voidable preference and fraudulent transfer claims constitutes a conflict of interest warranting appointing of trustee); *In re Clinton Centrifuge, Inc.*, 85 B.R. 980, 985 (Bankr. E.D. Pa. 1988) ("inappropriate relations between corporate parents and subsidiaries" constitutes cause to appoint a Chapter 11 trustee); *In re Philadelphia Athletic Club, Inc.*, 15 B.R. 60, 62-63 (Bankr. E.D. Pa. 1981) (holding that appointing a trustee is in the best interests of the creditors when the principals of the debtor occupied conflicting positions in transferee companies).

65. Accordingly, the inability of the Debtor and its representative to investigate their own acts is a conflict that constitutes additional cause to remove the Debtor as debtor in possession under 11 U.S.C. § 1185.

D. **The Court Should Order That the Subchapter V Trustee also Has the Investigatory and Reporting Powers under Section 1183(b)(2).**

66. If a Subchapter V debtor ceases to be a debtor in possession, which would occur if it was removed pursuant to Section 1185(a), the Bankruptcy Code provides that the Subchapter V trustee shall:

(A) perform the duties specified in section 704(a)(8) and paragraphs (1), (2), and (6) of section 1106(a) of this title; and

(B) be authorized to operate the business of the debtor. . . .

*See* 11 U.S.C. § 1183(b)(5).

15

67. However, the Bankruptcy Code also provides that the Subchapter V trustee shall, "perform the duties specified in paragraphs (3), (4) and (7) of section 1106(a) of this title, if the court, for cause and on request of a party in interest, the trustee, or the United States trustee, so orders. . . . " *See* 11 U.S.C. § 1183(b)(2). Sections 1106(a)(3) and (a)(4)(A) provide that:

> (3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
>
> (4) as soon as practicable—
>
>> (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate . . . .

*See* 11 U.S.C. §§ 1106(a)(3) & (a)(4)(A).

68. For the reasons stated herein, if the Court grants this Motion and removes the Debtor as debtor in possession, the Court should also order that the Subchapter V trustee has the investigatory and reporting powers set forth in Sections 1106(a)(3) and (a)(4) so that the Subchapter V trustee can investigate and report on any potential causes of action the Debtor may have, including under Chapter 5.

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order (a) removing the Debtor as debtor in possession; (b) expanding the Subchapter V trustee's role in this case pursuant to Sections 1183(b)(2) and (5), and (c) granting such other relief as is just under the circumstances.

Dated: June 9, 2023

Tracy Hope Davis
United States Trustee, Region 17

By: /s/ *Edward M. McDonald Jr.*
   Edward M. McDonald Jr.,
   Trial Attorney

16

# EXHIBIT A

# PROPOSED FORM OF ORDER

Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Edward M. McDonald Jr., Trial Attorney
State Bar No. NY 4126009
*edward.m.mcdonald@usdoj.gov*
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Cell: (702) 388-6602
Attorneys for the United States Trustee for Region 17
    TRACY HOPE DAVIS

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>**GRAND CANYON DESTINATIONS, LLC,**<br><br>Debtor. | Case No: BK-S-23-10399-NMC<br>Chapter 11, Subchapter V<br><br>Date: July 11, 2023<br>Time: 9:30 a.m.<br>Location: Foley Courtroom 3-Telephonic<br>Tel: (669) 254-5252<br>ID: 161-166-2815; Code: 115788# |

### ORDER REMOVING SUBCHAPTER V DEBTOR AS DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185(a) AND GRANTING SUBCHAPTER V TRUSTEE DUTIES UNDER 11 U.S.C. §1183(b)(2)

Based on the *Motion of the U.S. Trustee to Remove Subchapter V Debtor in Possession Pursuant to 11 U.S.C. § 1185(a), Grant Relief under 11 U.S.C. § 1183(b)(2), and Reservation of Rights* ("Motion"), the Cordero declaration and Semana declaration filed in support of the Motion, the hearing held on July 11, 2023 (appearances noted on the record), the Court having stated on the record its findings

of fact and conclusions of law, which are incorporated herein pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7052, and Federal Rule of Civil Procedure 52, with good cause having been shown,

**IT IS HEREBY ORDERED** that the Motion is **GRANTED**; and,

**IT IS FURTHER ORDERED** that Grand Canyon Destinations, LLC is **REMOVED AS DEBTOR IN POSSESSION**; and,

**IT IS FURTHER ORDERED** that the Subchapter V trustee's duties shall include those set forth in 11 U.S.C. §1183(b)(2).

**IT IS SO ORDERED.**

Submitted by:

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:  /s/ Edward M. McDonald Jr.
    Edward M. McDonald Jr., Esq.
    United States Department of Justice
    Attorney for the United States Trustee

# RULE 9021 DECLARATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the Court's ruling and that:

☐ The court has waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

| APPROVE/DISAPPROVE | APPROVE/DISAPPROVE |
|---|---|
| _____ <br> CANDACE C CARLYON, ESQ. <br> CARLYON CICA CHTD. <br> 265 E. WARM SPRINGS RD, STE 107 <br> LAS VEGAS, NV 89119 <br><br> *Counsel for the Debtor* | _____ <br> NATHAN F. SMITH <br> 2112 BUSINESS CENTER DRIVE <br> IRVINE, CA 92612 <br><br> *Subchapter V Trustee* |

☐ I certify that this is a case under Chapter 7 or 13, that I served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

I declare under penalty of perjury that the foregoing is true and correct.

By: */s/ Edward M. McDonald Jr.*
Edward M. McDonald Jr., Esq.
United States Department of Justice
Attorney for the United States Trustee