Terri H. Didion, Assistant United States Trustee        E-Filed: July 6, 2023
State Bar No. CA 133491
Edward M. McDonald Jr., Trial Attorney
State Bar No. NY 4126009
Email: *edward.m.mcdonald@usdoj.gov*
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Cell: (702) 388-6602
Attorneys for the United States Trustee for Region 17
    TRACY HOPE DAVIS

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**GRAND CANYON DESTINATIONS, LLC,**<br><br>        Debtor. | Case No: BK-S-23-10399-NMC<br>Chapter 11<br>(Jointly Administered) |
| In re:<br><br>**ATHENS INC.,**<br><br>        Debtor. | Case No: BK-S-23-11659-NMC<br>Chapter 11<br><br>Date: July 11, 2023<br>Time: 9:30 a.m.<br>Location: Foley Courtroom 3-Telephonic<br>Tel: (669) 254-5252<br>ID: 161-166-2815; Code: 115788# |

**REPLY OF THE U.S. TRUSTEE TO THE OPPOSITION TO THE MOTION OF THE U.S. TRUSTEE TO REMOVE SUBCHAPTER V DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185(a), GRANT RELIEF UNDER 11 U.S.C. §1183(b)(2), AND RESERVATION OF RIGHTS**

    To the Honorable NATALIE M. COX, United States Bankruptcy Judge**:**

    Tracy Hope Davis, United States Trustee for Region 17 ("U.S. Trustee"), hereby files this

omnibus reply to the *Opposition* [ECF No. 165] filed by captioned, jointly administered debtors

Grand Canyon Destinations, LLC ("GCD") and Athens Inc. ("Athens") (together, the "Debtors")

to the *Motion of the U.S. Trustee to Remove Subchapter V Debtor in Possession Pursuant to 11 U.S.C. §*

*1185(a), Grant Relief under 11 U.S.C. § 1183(b)(2), and Reservation of Rights* [ECF No. 118; Athens Case,

1

ECF No. 50] ("Motion") filed in each of GCD's and Athens' cases before they were jointly administered .[1]

## **INTRODUCTION**

The U.S. Trustee has carried her burden to show that the Debtors should be removed and replaced by the Subchapter V Trustees. Nothing in the Opposition changes the fact that Debtors made risky unsecured loans to a company 40% owned by their principal in a new and volatile market using EIDL funds in contravention to the terms of the EIDL loans and lost well over a million dollars in so doing. Debtors' plan does not include actions to recover these moneys and general unsecured creditors stand to effectively recover nothing under the plan.

Consistent with her independent and statutory duties, the U.S. Trustee reserves all rights with respect to this matter, including, but not limited to her right to take any appropriate action under title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure, and the local bankruptcy rules of the United States Bankruptcy Court.

The Reply is supported by the following Memorandum of Points and Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### BACKGROUND FACTS AND PROCEDURAL POSTURE

1.      The facts set forth in the Motion filed in this case and in the Athens Case are incorporated herein by reference. [*See* ECF No. 118; *see also* Athens Case, ECF No. 50].

---

[1] Unless otherwise noted: "Section" refers to a section of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"); "FRBP" refers to the Federal Rules of Bankruptcy Procedure; FRE refers to the Federal Rules of Evidence; and, "ECF No." refers to the bankruptcy docket for *In re Grand Canyon Destinations, LLC,* Case No. 23-10399-NMC. "Athens Case" refers to *In re Athen's Inc.*, Case No. 23-11659-NMC (Bankr. D. Nev.). Athens Case and ECF No. when referenced together refers to the bankruptcy docket in the Athens Case.

The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in the Debtors' cases, pursuant to FRBP 9017 and FRE 201. To the extent that the Reply contains factual assertions predicated upon statements made by Debtors, any of Debtors' current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under FRBP 9017 and FRE 801(d)(2).

2.      On June 9, 2023, the U.S. Trustee objected to the Debtors' joint plan of reorganization.  [*See* ECF No. 116; *see also* Athens Case, ECF Nos. 47-48].  On June 23, 2023, Debtors filed an amended plan, to which the Nevada Department of Taxation has objected.  [*See* ECF Nos. 151 & 162].

3.      On June 20, 2023, the Court entered an order jointly administering the Debtors' cases, with GCD's case as the lead case.  [*See* ECF No. 133].

4.      On June 21, 2023, GCD filed an amended Schedule G and amended statement of financial affairs ("SOFA") [*see* ECF Nos. 139-140] and Athens filed an amended petition, amended Schedules D, E/F, G and H, and an amended SOFA [*see* ECF Nos. 141-143].

5.      On June 9, 2023, the U.S. Trustee filed the Motion in the Debtors' cases.  [*See* ECF No. 118; Athens Case, ECF No. 50].

6.      On June 27, 2023, the United States Small Business Administration ("SBA") filed a Joinder to the Motion.  [*See* ECF No. 153].

7.      On June 26, 2023, the Court extended the objection deadline to the Motion to June 30, 2023, and the U.S. Trustee's reply deadline to July 6, 2023.  [*See* ECF Nos. 148 & 152].

8.      On June 30, 2023, the Debtors filed the Opposition [ECF No. 165], which is supported by the declaration of Anthony Dobbs [ECF No. 166] ("Dobbs Declaration") and the declaration of Tracy Janssen [ECF No. 167] ("Janssen Declaration").

9.      The Opposition advances a number of arguments in opposition to the Motion, including:  (a) that the loans by Debtors to New Charters Nevada, Inc. ("NCN") are working capital; (b) that NCN is not an affiliate of the Debtors; (c) that neither the loans nor NCN's default are reasons to oust the Debtors as debtors in possession ("DIPs"); (d) that Debtors cannot afford to have the Subchapter V trustees take over their businesses; (e) that creditors benefit from retaining current management; and, (f) that no purpose is served by removing the Debtors as DIPs on the eve of confirmation.  [*See* ECF No. 165, pp. 6-17 of 120].

/  /  /

1

<u>ARGUMENT</u>

2

**A.** **The SBA Loan Documents and SBA Guidance Documents Define How the EIDL Loan Moneys Can Be Used and Indicate That Debtors Did Not Use the Proceeds Properly.**

3

4

10.    Debtors argue under state and bankruptcy case law, and generally accepted accounting principles, that the loans made by Debtors to NCN constituted working capital and therefore did not violate the terms of the SBA loans.  [*See* ECF No. 165, pp. 6-7 of 120].

5

6

7

11.    Debtors also argue the loans constituted 'current assets' because the loans to NCN were due within 90 days and therefore did not alter the Debtors' working capital.  [*See* ECF No. 165, p. 7; lines 15-20].  However, it is important to note that these loans are no longer 90-day loans:  the GCD to NCN loan repayment deadline was extended from August 10, 2022 to August 10, 2023, and the Athens to NCN loan repayment deadline was extended from August 10, 2022 to August 10, 2023.  [*See* ECF No. 165, Exhibits 1, 3, 4 & 6].  The income projections provided with Debtors' amended Plan, which extend through 2026, do not include moneys from NCN in repayment of the loans.  [*See* ECF No. 151, pp. 10-11 of 25].

8

9

10

11

12

13

14

12.    The SBA guidance document attached to the declaration of Carla Cordero [ECF No. 119] ("Cordero Declaration") tell borrowers how they can use the SBA EIDL Loans, and provide that they can be used as "[w]orking capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt incurred at any time (past, present, or future)."  [*See* ECF No. 119, p. 6 of 22].

15

16

17

18

19

13.    This is a summation of the Code of Federal Regulations on how businesses can spend economic injury disaster loans, which provides that "[y]ou can only use the loan proceeds for working capital necessary to carry your concern until resumption of normal operations and for expenditures necessary to alleviate the specific economic injury, but not to exceed that which the business could have provided had the injury not occurred."  *See* 13 C.F.R. 123.303(a).[2]

20

21

22

23

24

25

26

---

27

[2] The same section of the Code of Federal Regulations provides that the EIDL Loans cannot be used to "[p]ay dividends or other disbursements to owners, partners, officers or stockholders, except for reasonable remuneration directly related to their performance of services for the business."  *See* 13 C.F.R. 123.303(b)(5).

28

4

14.     Loaning money to a cryptocurrency company that is 40% owned by the Debtors' principal does not constitute a regular payment for the Debtors' ordinary operating expenses.

15.     Thus, Debtors loaned money counter to the allowed uses set forth in the EIDL loan documents and guidance materials, and this constitutes cause to remove the Debtors from possession.

**B.     The SBA Loan Documents Govern When the SBA Must Be Notified and There Is No Bright-Line Rule Concerning "Affiliation" Under the Code of Federal Regulations**

16.     Debtors argue that NCN is not an affiliate of the Debtors under the Code of Federal Regulations, and therefore the Debtors were not required to receive written permission from the SBA before making the loans to NCN.  [*See* ECF No. 165, pp. 7-8 of 120].

17.     The Motion alleges that Debtors misused the EIDL proceeds because Debtors did not receive permission from the SBA to transfer the EIDL proceeds to NCN.  [*See* ECF No. 118, p. 13 of 20].

18.     The Motion provides evidence of Mr. Dobbs' testimony that he never asked the SBA if Athens could loan EIDL funds to NCN.  The U.S. Trustee requested that GCD provide evidence of whether it had asked the SBA if GCD could loan EIDL funds to NCN, did not receive an answer to that question, and noted that as additional evidentiary support to the Motion. [*See* ECF No. 119, p. 2 of 22; ¶3; ECF No. 120, pp. 5-6 of 40 & Exh. 3, pp. 48:21 – 49:16].

19.     The SBA Loan Documents specify when borrowers must receive written permission from the SBA before making distributions.  [*See* ECF No. 118, p. 4 of 20].  These requirements are very broad and include that a borrower will not make any distribution, including loans, of its assets to any of its owners, partners, employees, affiliates, or any other company, without written permission of the SBA.  [*See id.*]

20.     The requirements of the loan documents are broad enough to encompass transfers of the borrower's assets and not just the loan proceeds it received, and to head off arguments that a borrower loaned non-EIDL loan moneys.  Thus, the implication in the Opposition that Debtors may have used other non-EIDL moneys to loan to NCN does not take into account the

fungibility of money and also does not allow Debtors to escape the requirement to seek written permission from the SBA before making the NCN loans. [*See* ECF No. 165, p. 5 of 120, ¶¶18 & 24].

21.     Therefore, Debtors were required to receive written permission from the SBA to loan, or otherwise transfer, any of their assets to any other company, not just to affiliates, and they failed to do so.

22.     In addition, the Code of Federal Regulations provides that "[i]n determining whether affiliation exists, SBA will consider the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation." *See* 13 C.F.R. 121.103(a)(5). Accordingly, affiliation under the Code of Federal of Regulations with respect to the SBA is based on the totality of the circumstances and not simply one factor as the Debtors assert. If the SBA is not notified by a borrower before it makes a transfer covered by the EIDL Loan Documents, it cannot determine whether to approve a transfer, including the loans made by the Debtors to NCN.

23.     Accordingly, the Debtors failed to obtain written permission from the SBA before making these loans, as required by the EIDL Loan documents, which constitutes cause to remove the Debtors from possession.

   **C.     Self-Dealing and the Failure to Pursue or Investigate Avoidance Actions is Cause to Oust the Debtors as DIPs.**

24.     Debtors also argue that neither a pre-petition loan default nor the inability to collect from NCN constitutes cause to remove the Debtors as DIPs. [*See* ECF No. 165, pp. 8-15 of 120].

25.     Debtors argue that they "have not only shown a genuine business purpose with respect to the New Charters pre-petition loans, but have conducted themselves in an exemplary manner before this Court" and dispute that they violated the terms of the SBA Loan documents. [*See* ECF No. 165, p. 15 of 120; lines 6-14].

26.     Debtors point to the first day declaration, which states that Bitcoin generated revenues of 300% in 2020 and 60% in 2021, to assert that they did not engage in gross

mismanagement.  [*See* ECF No. 165, p. 9 of 120 n. 6].  Thus, in a year when Bitcoin returns were dropping precipitously, Debtors loaned EIDL moneys, without the permission of the SBA, as required by the EIDL Loan documents, to a company of which Mr. Dobbs owns 40%, and without having those loans secured by personal guarantees or liens securing NCN's assets.  [*See* ECF No. 165, p. 9 of 120 n. 6, and Exhibits 1, 3, 4 & 6].  These loans were for $482,823 (from Athens to NCN) and $1,895,578 (from GCD to NCN), and for which the Debtors received repayment of $68,200 (from NCN to Athens) and $853,592.39 (from NCN to GCD). [*See* ECF No. 165, pp. 5-6 of 120; ¶¶ 15-16 & 21-22].  Thus, Debtors loaned $2,378,401 for a return of $921,792.39.  Debtors are unlikely to receive much of the net $1,456,608.61 loaned to NCN that has not been repaid, which is more than 18% of the total debt on Debtors' schedules, and none of that money will go to creditors in Debtors' amended plan.  [*See* ECF Nos. 44 (p. 3 of 130), 93 (p. 11 of 11), 142 (pp. 4 & 7 of 10), and 151 (pp. 10-11 of 25)].

27.    Debtors' amended plan does not explain what, if any, efforts they have made to avoid the loans made to NCN through Chapter 5 or through other actions, and does not include any revenue on its financial projections related to the loans to NCN.  [*See* ECF No. 151, pp. 10-11 & 14 of 25].[3]  Unsecured and undersecured creditors outside of the convenience class payments will essentially receive nothing on those claims through the amended plan.  [*See* ECF No. 151, pp. 17-18 of 25].

28.    In addition, the Dobbs Declaration provides a one paragraph assertion that Debtors have no sound business justification for obtaining judgments against NCN in the current cryptocurrency market.  Thus, creditors will not get any loan repayments from NCN nor proceeds from avoidance actions pursued against NCN.  [*See* ECF No. 166, p. 3 of 5; ¶15].

---

[3] The Dobbs Declaration provides that the "bulk of the monies loaned to New Charters were utilized for equipment purchases and hosting services," and cites to purchase invoices attached as Exhibit 9 to the Opposition.  [*See* ECF No. 166, p. 4 of 5; ¶20; *see also* ECF No. 165, pp. 96-120]. These invoices appear to include hundreds of thousands of dollars of cryptocurrency mining machines, which might be recovered through avoidance actions and resold for the benefit of creditors.  [*See* ECF No. 165, pp. 96, 98, 99, 106, 108, 110, 113, 115 & 117-120].

29.     The Motion asserts that Debtors engaged in gross mismanagement by making the loans to NCN and suffer from conflicts because NCN is 40% owned by Mr. Dobbs and therefore unlikely to be a target of avoidance actions or investigations.  [*See* ECF No. 118, pp. 10-16 of 20].

30.     The Opposition assertion that a pre-petition loan that does not pay off is not a reason to displace Debtors ignores the facts of this case, that Debtors used SBA loan moneys to make unsecured loans to a company owned, in part, by their principal, in a new and volatile industry in violation of the terms of the EIDL loan terms.

31.     The Opposition cites to *In re Keeley & Grabanski Land P'ship*, 455 B.R. 153 (B.A.P. 8th Cir. 2011) [*see* ECF No. 165, pp. 12-13], but the Court in that case ordered the appointment of a Chapter 11 trustee and quoted *In re Veblen West Dairy LLP*, 434 B.R. 550, 553(Bankr. D.S.D. 2010), for the proposition that in determining whether to order the appointment of a trustee:

> Considerations include the materiality of any misconduct, the debtor-in-possession's evenhandedness or lack thereof in dealings with insiders and affiliated entities in relation to other creditors, the existence of pre-petition voidable preferences or fraudulent conveyances, whether any conflicts of interest on the part of the debtor-in-possession are interfering with its ability to fulfill its fiduciary duties, and whether there has been self-dealing or squandering of estate assets. If cause is found, the appointment of a trustee is mandatory.

*In re Keeley & Grabanski Land P'ship*, 455 B.R. 153, 163 (B.A.P. 8th Cir. 2011).[4]

32.     As argued in the Motion, Mr. Dobbs stands on both sides of the issue of investigating and pursuing actions against NCN, which is a conflict sufficient to oust the DIPs. [*See* ECF No. 118, pp. 14-15 of 20].

33.     Debtors simply assert that they have shown "a genuine business purpose" in making the loans to NCN and have conducted themselves properly in their Subchapter V cases. [*See* ECF No. 165, p. 15 of 120; lines 6-14].

34.     But what the facts show are that Debtors used EIDL money, counter to the requirements of the SBA and without its permission, to make unsecured loans to a company

---

[4] Both *Grabanski* and *Veblen* are also cited in the Motion, albeit in the context of discussion of the burden of proof.  [*See* ECF No. 118, p. 12 n. 7].

8

owned 40% by their owner, in a new and volatile area of the market, have failed to recover almost $1.5 million of those loan moneys, which Debtors assert are not worth pursuing and from which Class 6 unsecured creditors in these cases might have received some dividend higher than the 0.0025% they will receive under the amended plan.

35.    For the reasons above, the Debtors should be removed from possession.

**D.    The Subchapter V Trustees Can Investigate Whether the Plan is Feasible, Can Utilize Mr. Dobbs In Running the Businesses; and the Motion Was Timely Filed.**

36.    Debtors also argue in the Opposition that:  Debtors lack the revenue to support the Subchapter V trustees if they oust the Debtors as DIPs [*see* ECF No. 165, pp. 15-16 of 120]; that creditors benefit from retaining current management [*see* ECF No. 165, p. 16 of 120]; and that there is no reason to outs the Debtors as DIPs on the eve of confirmation [*see* ECF No. 165, p. 17 of 120].

37.    Debtors have revised their plan, which indicates that they will have more than $41,000 in cash after all expenses and plan payments are made at the end of 2023, and that Debtors will have more than $97,000 in cash after all expenses and plan payments are made at the end of 2023.  [*See* ECF No. 151, pp. 10-11 of 25].  Therefore, there appears to be money available to pay Subchapter V trustees to, *inter alia*, investigate whether hundreds of thousands of dollars can be recovered to pay creditors.

38.    Debtors assert in the Opposition that ousting the Debtors as DIPs would mean that they would lose Mr. Dobbs' connections and expertise to the detriment of creditors.  [*See* ECF No. 165, p. 16 of 120].  However, neither the Opposition nor the Dobbs Declaration say that Mr. Dobbs will refuse to help the Subchapter V trustees in operating the Debtors.  [*See* ECF Nos. 165-166].

39.    The Debtors also argue that the "UST waited more than 4 months to bring this motion."  [*See* ECF No. 165, p. 17 of 120].  It is important to note that the Motion was timely filed.  GCD filed bankruptcy on February 3, 2023 and Athens filed bankruptcy on April 27, 2023, but both Debtors were still filing amendments to their schedules and/or SOFAs on June 21, 2023.  [*See* Athens Case, ECF No. 1; *see also* ECF Nos. 1 & 139-143].  In addition, Debtors' Plan made clear

that Debtors were not pursuing claims against NCN and that no revenue from NCN was included in their revenue projections.  [*See* ECF No. 104; *see also* ECF No. 151].  Debtors' first plan was only filed a month before the Motion was filed.

40.      Debtors still need to resolve issues related to the amended plan, including the Nevada Department of Taxation's ("NDT") plan objection and its priority claim of more than $1 million.[5]  [*See* ECF No. 162].  The hearing on Debtors' objection to that claim has been continued to August 11, 2023 and should be resolved before the Court considers confirming the plan.  Now is the time to put the Subchapter V trustees in a position where they can, *inter alia*, assess whether creditors can receive a higher dividend through avoidance actions by granting the Motion.

41.      For the reasons above, the Debtors should be removed from possession.

42.      **WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order (a) removing the Debtors as debtors in possession; (b) expanding the Subchapter V trustees' roles in Debtors' cases pursuant to Sections 1183(b)(2) and (5), and (c) granting such other relief as is just under the circumstances.

Dated: July 6, 2023                          Tracy Hope Davis
                                             United States Trustee, Region 17

                                             By:  */s/ Edward M. McDonald Jr.*
                                                  Edward M. McDonald Jr.,
                                                  Trial Attorney

---

[5] On April 26, 2023, GCD filed an amended Schedule E/F listing NDT's claim in an unknown amount.  [*See* ECF No. 93, p. 2 of 11; claim 2.2].  The NDT filed a proof of claim in the GCD Case for $1,158,123.38, including a priority claim of $1,005,973.92.  [*See* GCD Claim Register, Proof of Claim 18-1].  GCD has objected to this claim.  [*See* ECF No. 124].  This claim is not included in the amended plan.  [*See* ECF No. 151, pp. 15-16 of 25; Plan §2(b)].  The Court has not granted the claim objection, but has entered an order continuing the hearing on the Debtors' objection to the NDT's claim to August 15, 2023, so that the Debtors and the NDT can attempt to settle the issue.  [*See* ECF Nos. 168 & 170].